UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PATRICIA NELSON-WOOTEN, ) | CASE NO. 1:17CV2387 |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | GEORGE J. LIMBERT |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| ACTING COMMISSIONER OF SOCIAL ) | MEMORANDUM OPINION & ORDER |
| SECURITY ADMINISTRATION, ) | |
| Defendant. ) | |

Plaintiff Patricia Nelson-Wooten ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits filed on April 27, 2018, Plaintiff asserts that the administrative law judge ("ALJ") committed error by failing to properly evaluate and weigh the opinion of her treating physician, lacked substantial evidence and good reasons for the residual functional capacity ("RFC") that he determined for her, and failed to adjudicate a relevant period of time in his decision. ECF Dkt. #15. On May 29, 2018, Defendant filed a brief on the merits. ECF Dkt. #16. Plaintiff did not file a reply brief.

For the following reasons, the Court REVERSES the ALJ's decision and REMANDS the instant case for the ALJ to reevaluate and analyze the opinions of Dr. Hekman in accord with the treating physician rule.

## I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

On July 25, 2013, an ALJ issued a decision finding that Plaintiff was not disabled for social security purposes and therefore not entitled to Disability Insurance Benefits ("DIB") from May 1, 2011 to the date of his decision. ECF Dkt. #10 ("Tr." for Transcript of Proceedings) at 77. According to the ALJ in that decision, Plaintiff had protectively filed a Title II application for a period of disability and DIB alleging disability beginning October 15, 2008, and thereafter amended

---

[1] On January 20, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

her onset date at the hearing before him to May 1, 2011. *Id.* at 66. Plaintiff filed a request for review of the ALJ's decision to the Appeals Council, and on October 20, 2014, the Appeals Council denied Plaintiff's request for review. *Id.* at 78-85. Plaintiff appealed the decision to this Court by filing a complaint on November 13, 2014 through counsel. ECF Dkt. #1 in Case Number 1:14CV2500. Plaintiff, through counsel, filed a merits brief and Defendant filed a brief as well. ECF Dkt. #s 13, 16 in Case number 1:14CV2500. On October 16, 2015, this Court filed a Memorandum Opinion & Order and Judgment Entry affirming the ALJ's decision that Plaintiff was not entitled to a period of disability and DIB. ECF Dkt. #17 in Case Number 1:14CV2500.

Meanwhile, Plaintiff protectively filed an application for SSI on November 3, 2014, alleging disability beginning April 3, 2011, due to thyroid removal, Grave's disease, scoliosis, back problems, carpal tunnel syndrome ("CTS") in both hands and wrists, sciatica, a left leg cast due to tendon problems, and an ACL repair on the right knee. Tr. at 98, 116, 162-167.[2] Plaintiff's application was denied initially and upon reconsideration. *Id.* at 86-130. Following the denial of her application, Plaintiff requested an administrative hearing, and on October 21, 2016, an ALJ conducted an administrative hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id.* at 31, 131. On November 15, 2016, the ALJ issued a decision denying Plaintiff's application for SSI. *Id.* at 14-25. Plaintiff filed a request for review of the ALJ's decision and on October 23, 2017, the Appeals Council denied Plaintiff's request for review. *Id.* at 1-4, 161.

On November 14, 2017, Plaintiff filed a complaint in this Court. ECF Dkt. #1. On April 27, 2018, Plaintiff filed her brief on the merits. ECF Dkt. #15. On May 29, 2018, Defendant filed her brief on the merits. ECF Dkt. #16. Plaintiff did not file a reply brief.

---

[2]All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

## **II**. **ALJ'S DECISION**

In his November 15, 2016 decision, the ALJ noted that Plaintiff had previously filed an application for Title II DIB alleging disability beginning October 15, 2008 and the claim was denied initially, upon reconsideration, and by ALJ decision on July 25, 2013. Tr. at 14. The current ALJ noted that the prior ALJ found that Plaintiff was capable of performing a range of light work and the Appeals Council upheld the prior ALJ's decision and became administratively final thereafter. *Id.* The current ALJ thus found that res judicata applied to the previously adjudicated period from th alleged onset date through the date of the prior ALJ's decision of July 25, 2013. *Id*. The current ALJ thus found that his decision applied to the unadjudicated period beginning July 26, 2013. *Id*.

From that period, the ALJ in this case found that Plaintiff had not engaged in substantial gainful activity since the application date of November 3, 2014 and she had the severe impairments of degenerative disc disease ("DDD") of the lumbar spine; chronic pain syndrome; patellofemoral syndrome of the bilateral knees, with mild to moderate osteoarthritic changes; bilateral plantar fasciitis; obesity; bilateral CTS; and status-post right release surgery. Tr. at 16. He further found that these impairments, individually or in combination, did not meet or equal any of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 18. The ALJ thereafter determined that Plaintiff had the RFC to perform light work with the following limitations: she can lift and carry up to 10 pounds frequently and 20 pounds occasionally; sit for a total of 6 hours of an 8-hour workday; stand/walk up to 4 hours per 8-hour workday; push and pull as much as shown for lifting and carrying; frequently handle and finger with bilateral upper extremities; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance; frequently stoop; occasionally kneel, crouch, and crawl; and no exposure to unprotected heights or moving mechanical parts. *Id*. at 19-20.

In his decision, the ALJ reviewed the medical opinions in the file, including the checklist statements of Plaintiff's treating primary care physician, Dr. Hekman. Tr. at 22. The ALJ found that Dr. Hekman treated Plaintiff "intermittently" throughout the relevant time period, and the ALJ found his checklist statements to be inconsistent with substantial evidence of record, including Dr. Hekman's own treatment notes and physical examination findings. *Id*. The ALJ found that Dr.

Hekman's assessment was "not persuasive" as it "appeared to be a significant overstatement of the claimant's limitations and symptom severity." *Id*.

Based upon the testimony of the VE and his RFC for Plaintiff, the ALJ determined that Plaintiff could perform her past relevant work as a general office clerk. Tr. at 23. He also found that Plaintiff could perform other jobs existing in significant numbers in the national economy, including the jobs of mail clerk, ticket seller, and information clerk. *Id*. at 24-25. The ALJ thus held that Plaintiff was not disabled under the Social Security Act since November 3, 2014. *Id.* at 25.

### III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope

by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V. LAW AND ANALYSIS

### A. Treating Physician Rule

Plaintiff first asserts that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Hekman, and he failed to indicate the weight that he gave to those opinions. ECF Dkt. #15 at 14-19. The Court agrees and REMANDS the instant case in order for the ALJ to reevalute and properly analyze the opinions of Dr. Hekman's opinions under the treating physician rule.

On October 30, 2015, Dr. Hekman completed a medical source statement concerning Plaintiff's physical capacity. Tr. at 970. The form requested that Dr. Hekman mark the activities that Plaintiff could perform on a regular and continuing basis and described that as 8 hours per day

-5-

for 5 days per week or an equivalent schedule. *Id*. The form also asked Dr. Hekman to identify the medical findings that supported his assessment of any limitations, and it defined the word "rare" as meaning that the activity could not be performed for any appreciable period of time, the word "occasional" as meaning from very little up to 1/3 of the workday, and "frequent" as meaning from 1/3 to 2/3 of the workday. *Id*.

On the form, Dr. Hekman checked that Plaintiff's lifting was affected by her impairments and he indicated that Plaintiff could occasionally lift up to 10 pounds and up to no weight frequently. Tr. at 970. As to the findings supporting his opinion on this activity, Dr. Hekman identified cervical spondylolisthesis, hand numbness, chronic neck and shoulder pain, and severely painful CTS. *Id.* Dr. Hekman further found that standing/walking were affected by Plaintiff's impairments, and he opined that Plaintiff could sit for a total of 2 hours per 8-hour workday, and for 1 hour without interruption. *Id*. He wrote that low back pain prevented Plaintiff from prolonged sitting and standing and her walking was severely limited. *Id*. Dr. Hekman also checked that Plaintiff's ability to sit was impacted by her impairments and she could sit for a total of 2 hours per 8-hour workday and up to 1 hour without interruption. *Id*. He wrote that prolonged sitting led to lumbar radiculitis symptoms for Plaintiff. *Id.* He further checked that Plaintiff could rarely climb, balance, stoop, crouch, kneel or crawl and explained that Plaintiff's multiple musculoskeletal concerns, pain, and numbness status post a motor vehicle accident, would lead to pain. *Id.*

Dr. Hekman further checked that Plaintiff could rarely reach, push/pull, or perform gross or fine manipulations due to cervical spondylolisthesis, neck and shoulder pain, and severely painful CTS. Tr. at 971. He opined that Plaintiff could not work around heights, moving machinery or temperature extremes as she was status post ACL tear and reconstruction, which led to decreased mobility. *Id.* Dr. Hekman indicated that Plaintiff had been prescribed a brace and wheelchair, but not a cane, walker, TENS unit or breathing machine. *Id.* He opined that Plaintiff would need to alternate positions between sitting, standing and walking at will, and she experienced severe pain that interfered with her concentration, would take her off task, and would cause absenteeism. *Id*. Dr. Hekman further checked the box that Plaintiff would need to elevate her legs at will and at a 90 degree angle, and he explained that this was due to periodic numbness and tinging in her feet and

-6-

recurrent ACL tear and reconstruction. *Id*. When asked to identify any additional limitations that would interfere with Plaintiff's ability to work 8 hours per day and 5 days per week, Dr. Hekman wrote that, "Patient, in my opinion, has fibromyalgia. Working 8 hours a day may lead to significant fatigue, impaired concentration." *Id*.

On September 23, 2016, Dr. Hekman completed another medical source statement regarding Plaintiff's physical capacity. Tr. at 1014. He checked the same limitations as that in his October 30, 2015 medical source statement, identified the same findings and explanations for his limitations, and again opined that he thought that Plaintiff had fibromyalgia. *Id.* at 1014-1015.

An ALJ must give controlling weight to the opinion of a treating source[3] if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

---

[3] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

If an ALJ declines to give controlling weight to the opinion of a treating source, he must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 404.1527(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544, citing 20 C.F.R. § 404.1527(c). An ALJ is not required to discuss every factor in 20 C.F.R. § 404.1527(c).

In the instant case, the ALJ indicated that he had considered Dr. Hekman's checklist opinions. Tr. at 22. While acknowledging that an opinion of a treating source is generally attributed controlling weight, the ALJ found that Dr. Hekman's opinions were "not fully consistent with substantial evidence of record, including Dr. Hekman's own treatment notes and physical examination observations." *Id*. The ALJ found that Dr. Hekman "provided primary care services intermittently throughout the period." *Id*. He further found that Plaintiff received only conservative

treatment that helped her symptoms, the treatment notes lacked a prescription for a wheelchair although Plaintiff used one for transportation, the physical examinations showed good stability of the lower extremities, with no neurological or motor deficits, and no edema that would require ongoing elevation throughout the day as Dr. Hekman opined. *Id*. The ALJ also found that the objective clinical evidence did not support Dr. Hekman's note that Plaintiff had "severe" CTS as EMG studies indicated that the CTS was mild in nature and responded to treatment. *Id*. The ALJ concluded that Dr. Hekman's assessments "appeared to be a significant overstatement of the claimant's limitations and symptom severity, and [are] therefore not persuasive." *Id.*

Plaintiff first asserts that the ALJ erred by finding that Dr. Hekman was only an intermittent provider when he was in fact her primary care physician who provided treatment at all times throughout her claim. ECF Dkt. #15 at 15. The Court agrees with Plaintiff that Dr. Hekman appears to have been her primary care physician who treated her during the relevant time period for the instant case. ECF Dkt. #15 at 12-13; Tr. at 14. Besides the checklist statements, the other treatment notes from Dr. Hekman in the record show that he examined and treated Plaintiff on September 17, 2013, October 23, 2013, February 24, 2014, and April 17, 2015. Tr. at 403-410, 425-429, 451-456, 825-830, 935-949. However, the Court is not certain that the ALJ used the term "intermittently" to imply that Dr. Hekman was not a primary care physician, since the ALJ indicated in the same sentence concerning treating Plaintiff "intermittently" that Dr. Hekman provided primary care services. Tr. at 22. Nevertheless, even if the ALJ did discount Dr. Hekman's opinions because he erroneously found that Dr. Hekman provided medical services on an intermittent basis, the Court finds that it is harmless error because this was not the only reason or the primary reason that the ALJ relied upon in affording less than controlling weight to Dr. Hekman's opinions.

The Court notes that the ALJ also erred in his decision when he stated that Dr. Hekman opined that Plaintiff required the use of a wheelchair. Tr. at 22. Dr. Hekman did not state that Plaintiff required a wheelchair, but rather, he checked on the opinion form that a wheelchair and a walker had been prescribed to Plaintiff. *Id*. at 986, 1015. The ALJ did correctly state that a prescription or order for a wheelchair is not in the record. *Id*. at 22. The ALJ also seems to attach significance to the fact that Plaintiff was "wheelchair bound" and performed activities that he found

-9-

were inconsistent with her allegations of limited mobility, such as caring for her husband and helping him prepare and recover from back surgery. Tr. at 19-22. Besides the fact that Dr. Hekman did not opine that Plaintiff required the use of a wheelchair, Plaintiff, who appeared at the ALJ hearing in the wheelchair, did not testify that she was "wheelchair bound," but rather, she testified that the wheelchair and walker were prescribed to her to use on an as-needed basis, and she used the wheelchair on and off to prevent falling. *Id*. at 42-43. Further, she testified that she could walk and stand without the aid of either assistive device. *Id*. Thus, to the extent that the ALJ relied upon an inconsistency between Plaintiff's use of or requirement to use a wheelchair and her activities of helping her husband, this reliance is improper because the ALJ misread Dr. Hekman's checklist assessment and Plaintiff's testimony negates the ALJ's findings.

The ALJ further found that the "[p]hysical examinations demonstrated good stability of the lower extremities, with no neurological or motor deficits, and no edema that would necessitate ongoing elevation throughout the day" as Dr. Hekman had opined in his assessment. Tr. at 22. However, the ALJ cited to none of the physical examinations or records that supported these conclusions. Further, the record shows that on September 12, 2013, Plaintiff underwent a right knee arthroscopy, with a patellar femoral debridement, ACL reconstruction using RIGIDIX femoral fixation and a 9mm tibial fixation, with bone-patellar tendon-bone allograft. *Id*. at 461. She received physical therapy while in the hospital recovering from surgery. *Id*. at 480. The ALJ acknowledged this surgery in his decision and indicated that Plaintiff's subsequent "complaints of knee pain were attributed to mild osteoarthritic changes and bilateral patellar chondromalacia, conditions her treating orthopedists elected to treat conservatively with injections and physical therapy referrals." *Id*. at 20. The ALJ goes on to state that, "treating sources indicated that the osteoarthritic changes were not of a nature that made her a candidate for arthroplasty." *Id.* at 20. He cited to Dr. Farrow's note on October 6, 2015 that "[s]he does not have major structural issues of the knee that would benefit from arthroscopic intervention. Weight loss and further strengthening would be [b]eneficial." *Id.* at 20, citing Tr. at 989.

Besides a surgery, Plaintiff underwent numerous injections, wore knee braces, was referred to orthopedic specialists, pain management specialists, and to physical therapy for knee pain, and

-10-

she was prescribed Flexeril, Vicodin, Venlaxafine and Naproxen. Tr. at 386-387. And the ALJ left out a sentence in the middle of the notation by Dr. Farrow that Plaintiff did not have major structural issues that would benefit from an arthroscopy and that weight loss and strengthening would benefit her. *Id*. at 989. He actually stated between these sentences that such arthroscopic intervention "should be the last resort." *Id*. at 989. Thus, another surgery was not totally excluded as a possibility in the future.

Further, the ALJ fails to discuss progress notes from orthopedic specialist, Dr. Hampton, on November 17, 2014 in which he indicated that Plaintiff had "persistent instability symptoms in her right knee." Tr. at 367. His examination of Plaintiff's right knee indicated that Lachman's test was slightly positive with soft endpoint, a questionable pivot shift, and a crepitant range of motion existed in the right knee "which appears to be femoral tibial with some patello femoral crepitance." *Id*. He ordered a right knee MRI which showed that the anterior cruciate ligament was intact with evidence of tricompartmental osteoarthrtitis of the knee. *Id*. at 361. He administered an injection into Plaintiff's right knee. *Id*. Further, the ALJ does not discuss Plaintiff's presentation to Dr. Goodman at the Family Practice of the Cleveland Clinic on September 11, 2015 where she complained of a popping when stretching her left knee three days prior. *Id*. at 959. She reported that she went to the emergency room and had x-rays and they told her to get a MRI. *Id*. Dr. Goodman noted that the x-ray was negative, but physical examination showed a mild edema on the left knee and pain to lateral rotation. *Id*. at 960. He diagnosed a left knee sprain and possible MCL sprain and again referred her to orthopaedics. *Id*. He also prescribed Medrol. *Id*. Plaintiff presented to Dr. Farrow at the Sports Health Center of the Cleveland Clinic for her right and left knee pain on September 18, 2015 and he found that Plaintiff had diffuse pain in both knees and a lot of patellofemoral irritability. *Id.* at 1005. He noted that a prior MRI showed significant chondral loss in the lateral compartment of the right knee. *Id*. He ordered a left knee MRI as the irritability was more on the left knee. *Id.* Plaintiff followed up with Dr. Farrow on October 6, 2015 and he noted that the MRI of her left knee showed degenerative changes in the patellofemoral and medial compartment and a moderate to large joint effusion with small intraarticular bodies. *Id.* at 989. He

-11-

aspirated a 3+ effusion on Plaintiff's left knee and injected both of Plaintiff's knees with Kenalog and Lidocaine. *Id.*

In addition, Dr. Hekman's own treatment notes show that on February 24, 2014, Plaintiff complained of severe front leg pain, significant lower back and neck pain, numbness in her feet and legs, and severe knee pain. Tr. at 403. Dr. Hekman noted upon examination that Plaintiff's right knee was immobilized in a brace and she had pain with range of motion and tenderness in her cervical spine and shoulders, as well as tenderness to palpation in her lower back, along with mild hypertonicity. *Id*. at 405. He approved the rare use of Vicodin and refilled her prescriptions for Flexeril and increased her Effexor. *Id*. at 407. He also diagnosed Plaintiff with an ACL tear and noted that Plaintiff was working with the orthopedic department and she continued to be in a leg brace. *Id.* He prescribed her Hydrocodone and Acetaminophen. *Id.* He further diagnosed Plaintiff with fibromyalgia and noted that she had improvement of her symptoms with Effexor. *Id.* Dr. Hekman examined Plaintiff again on April 17, 2015 and she was crying in his office due to hip and lower back pain. *Id*. at 935. She was also having chronic knee pain. *Id.* Dr. Hekman's clinical examinations showed positive multiple fibromyalgia tender points, hypertonicity in her low back, tenderness to palpation of the low back and neck, as well as the shoulders. *Id*. at 405, 428, 452, 517. A lumbar MRI showed moderate severe disc height loss and lumbar degeneration, and knee MRIs showed significant changes in the knees. *Id*. at 346, 621, 989, 1005. Dr. Hekman referred Plaintiff to physical therapy for her knee pain and fibromyalgia and gave her a handicapped parking sticker, and he encouraged self-care for her lumbar spondylosis. *Id*. at 941.

Based upon the above, the Court remands the instant case because the ALJ violated the treating physician rule by failing to provide proper evaluation, analysis and reasons for affording less than controlling weight to the opinions of Dr. Hekman as to Plaintiff's knee impairments, fibromyalgia, and osteoarthritis. The Court makes no finding or statement as to disability, but remands this case for reevaluation, analysis and proper application of the treating physician rule based upon the relevant law as to Plaintiff's knee impairments and osteoarthritis.

As to Plaintiff's CTS, the Court finds that the ALJ properly applied the treating physician rule to Dr. Hekman's opinions and substantial evidence supports the ALJ's finding that Dr.

Hekman's categorization of Plaintiff's CTS as "severe" was unsupported by the record. Tr. at 22. The ALJ found that this characterization was belied by the EMG studies which showed that the CTS was mild in nature and responded to treatment. *Id.* at 22. Further, Dr. Hekman's September 17, 2013 and progress notes indicate that Plaintiff reported that her CTS pain had improved, although she still complained that it caused problems for her. Tr. at 451, 456. On February 24, 2014, Dr. Hekman noted that Plaintiff had a 50% improvement in her postoperative CTS hand and "[t]his should be a good **result**." [emphasis in original]. *Id.* at 407. Dr. Hekman's April 17, 2015 progress notes also indicate that Plaintiff indicated that her CTS was 50% better in her right wrist after the surgery. *Id.* at 826. The Court finds that this is sufficient for affording less than controlling weight to Dr. Hekman's opinion as to the severity of Plaintiff's CTS and substantial evidence supports this determination by the ALJ.

The Court further finds that the ALJ's violation of the treating physician rule is not harmless error. As the Sixth Circuit recognizes, a violation of the good reasons requirement could constitute harmless error in three circumstances: (1) where the treating source's opinion was patently deficient; (2) where the Commissioner made findings consistent with the treating source's opinion; or (3) where the Commissioner otherwise met the goal of 20 C.F.R. § 416.927(c)(2). *Cole*, 661 F.3d at 940. Here, the opinion of Dr. Hekman was not patently deficient on its face, the ALJ did not make findings consistent with that opinion, and the goal of the regulation was not otherwise met because the ALJ's decision does not permit meaningful judicial review. Accordingly, the undersigned recommends that the Court find that the ALJ's treatment of the opinion of Dr. Hekman did not constitute harmless error.

### **B.** **RFC**

Plaintiff additionally argues that substantial evidence does not support his RFC for her. ECF Dkt. #15 at 21. In light of the Court's remand of this case based upon the ALJ's failure to comply with the treating physician rule, the Court declines to address this allegation as the ALJ's re-evaluation and analysis on remand may impact his findings on this issue in the remaining steps of the sequential evaluation. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 417 (6th Cir. 2011).

### C. Title II Benefits Period

Plaintiff also asserts that the ALJ in the instant case failed to adjudicate a relevant period of time from a prior ALJ decision issued on July 25, 2013 as to a DIB claim that she had filed. ECF Dkt. #15 at 21-22. Plaintiff had filed an application for DIB, alleging disability beginning October 15, 2008, which was initially denied on February 24, 2012, denied upon reconsideration on July 25, 2012, and then an unfavorable decision was issued on July 25, 2013 by an ALJ. Tr. at 14. The Appeals Council upheld the ALJ's unfavorable decision on September 20, 2014. *Id*. Plaintiff asserts in the instant case that the ALJ should have adjudicated the period from July 26, 2013 through the expiration of her insured status on June 30, 2014. ECF Dkt. #15 at 21-22.

The ALJ in the instant case reviewed this prior determination in his decision and applied the principles of res judicata from the prior alleged onset date of October 15, 2008 through the date of the prior ALJ's decision, which was issued on July 25, 2013. Tr. at 14. The current ALJ indicated that his decision applied to the unadjudicated period beginning July 26, 2013. *Id*. When he denied her current application for SSI, however, he found that Plaintiff was not under a disability since November 3, 2014, the date that she protectively filed the current application. *Id*. at 25.

Plaintiff cites to the Program Operations Manual System ("POMS"), S1 00601.035 entitled "Adjudicating Title II when a Title XVI Application is Filed," and indicates that it states that, "[w]hen the claimant...files a valid Title XVI application, he or she has also filed a valid Title II application. In this situation, both the Title XVI and Title II applications must be processed, adjudicated and effectuated." ECF Dkt.# 15 at 21, quoting POMS S1 00601.035.

Defendant acknowledges this POMS and asserts that this is what happened in this case. ECF Dkt. #16 at 9. Defendant submits that in order to be eligible for SSI under Title XVI, Plaintiff had to establish that she was disabled while her application was pending. ECF Dkt. #16 at 9, citing 42 U.S.C. § 1382(c); 20 C.F.R. §§ 416.330, 416.335 (2016). Defendant quotes relevant law stating that, "[p]ayment of benefits may not be made for any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." ECF Dkt. #16 at 9-10, quoting 20 C.F.R. § 416.501(2016) and citing 42 U.S.C. § 1382(c)(7). Defendant concludes that the relevant period in the instant case thus began

on November 3, 2014, the date that Plaintiff protectively filed her current application for SSI. *Id*.

On June 4, 2018, Defendant filed a notice of filing supplemental record in which she had inadvertently omitted from the record. ECF Dkt. #17. The omitted document, which was certified, is the Notice of Disapproved Claim dated December 14, 2014 concerning Plaintiff's DIB claim. ECF Dkt. #17-1. Defendant asserts that this Notice of Disapproved Claim was adjudicated and Plaintiff moved forward on her SSI application which is before the Court and the only claim that was pending before the ALJ and therefore with this Court.

The Court agrees with Defendant's assertions and finds that the ALJ in the instant case adjudicated the proper time period because Plaintiff's prior DIB application was separately adjudicated and finalized, including through this Court in Case Number 1:14CV2500, for DIB purposes. The Court in the prior case affirmed the ALJ's decision dated July 25, 2013 which found that Plaintiff was not disabled for DIB purposes.

## **VI.    CONCLUSION**

For the above reasons, the Court finds that the ALJ violated the treating physician rule as to the opinions of Dr. Hekman. The Court therefore REVERSES the decision of the ALJ and REMANDS the instant case to the ALJ for reevaluation and explanation as to Dr. Hekman's opinions concerning Plaintiff's impairments, except for her CTS.

IT IS SO ORDERED.

Date: March 18, 2019      */s/George J. Limbert*
                             GEORGE J. LIMBERT
                             UNITED STATES MAGISTRATE JUDGE